**34**

**AMERICAN LEASE PLANS, INC.,**
**Plaintiff-Appellant,**

·v.

**HOUGHTON CONSTRUCTION COMPA-**
**NY, INC., et al., Defendants-**
**Appellees.**

**No. 73-3077**

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

April 8, 1974.

Tabor R. Novak, Jr., Robert S. Lamar, Jr., Montgomery, Ala., for plaintiff-appellant.

George B. Azar, Montgomery, Ala., for defendants-appellees.

Before BELL, GODBOLD and GEE, Circuit Judges.

PER CURIAM:

This dispute concerns damages resulting from defaults by defendants-appellees (collectively, "Houghton") in payments under lease agreements with the plaintiff ("ALP"). ALP purchased various pieces of equipment at defendants' request and leased them to defendants under long-term contracts with rentals premised on repayment of the purchase price plus financing charges. Plaintiff's profits stem from charges for financing such equipment.

Houghton ceased making payments, and ALP took possession of the equipment and sold or leased all of it, except for an accounting computer, to others. ALP then brought this suit to recover the deficiency between the amount claimed to be due under the contracts and the amount received from resales and new leases of the equipment. Houghton admitted the contractual obli-

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

gations but asserted as defenses that plaintiff had failed to properly mitigate damages, that plaintiff's damage computations were incorrect, and that plaintiff had agreed to release defendants from liability as to some of the equipment if defendants found someone to whom it could be sold or leased. In a jury trial the issues were designated as separate for each of the five pieces of equipment and a separate verdict rendered as to each. With respect to four pieces the jury found for the defendants. As to the fifth, damages were assessed at an amount which ALP claims is unjustifialy low. Plaintiff's motion for a new trial was denied and this appeal followed.

## I.

ALP's major contention is that each verdict was contrary to the evidence. Our inspection of the record reveals, however, that at no time did ALP move for a directed verdict. In such circumstances "the sufficiency of the evidence supporting jury submission of a case or the jury's findings is not reviewable on appeal." Little v. Bankers Life and Casualty Co., 426 F.2d 509, 510 (C. A.5, 1970). Our inquiry is thus limited to whether "there was *any* evidence supporting the submission of the . . . issue and the jury's finding" irrespective of its sufficiency, or "to whether plain error has been committed which, if not noticed, would result in a manifest miscarriage of justice." *Id*. at 511. Nor does the fact that ALP moved for a new trial reopen the question of sufficiency for review; we may inquire only whether there was an abuse of discretion in denying the motion. *Id*. After examining the evidence in accordance with these standards, we have concluded that there was some evidence to support the verdicts with regard to three pieces of equipment. With respect to the remaining two, the evidence was inadequate under even these relaxed standards.

With respect to each unit of equipment, plaintiff proved by testimony of its vice-president in charge of accounts the amounts of rent due and unpaid and the amounts that plaintiff would have received from defendants for rentals in the future. Except for an argument over right to accelerate,[1] defendants made no claim at trial or now that the testimony of the vice-president was not accepted by the jury as credible. Indeed the issues were tried in the form of disputes over the amounts of credits to which defendants were entitled against plaintiff's proven figures for rentals.

*The forklift truck.* ALP claimed damages of $2,589.42, and the jury returned a verdict for the defendants. There was evidence that this unit had been damaged by abuse and vandalism after plaintiff assumed possession and control. There was thus some evidence from which the jury might have inferred that actions attributable to the plaintiff produced a reduction in the unit's resale value exceeding plaintiff's claimed damages.

*The accounting computer.* Plaintiff claimed damages of $15,610.97, and the jury awarded $2,133.70. On appeal plaintiff concedes that its claimed damages should be reduced by the salvage value of the computer, which at the time of trial remained in the plaintiff's possession. The defendants produced testimony that ALP initially insisted on receiving the full amount due under the lease agreement as the price for resale of the computer and that, because this amount exceeded the price of a new computer, the potential purchasers secured by defendants bought new computers instead. After finding itself unable to obtain a buyer willing to pay the requested price in the vicinity of Houghton's office, the plaintiff took physical possession of the computer in order to transfer it to ALP's offices in South Carolina. There was evidence that in effecting this transfer agents of the plaintiff transported the computer in an open

1. See part III below.

pickup truck during a rain. There was thus some evidence on the basis of which the jury could find that the actions of plaintiff constituted a failure to mitigate damages and that this failure, when coupled with whatever value the computer retained, reduced plaintiff's damages to the amount awarded.

*The backhoe.* Plaintiff claimed damages of $1,840.83, and the jury returned a verdict for the defendants. There was testimony by one of the defendants that plaintiff's agent had represented that the negotiation of a new lease on the backhoe with another contractor would relieve defendants of all liability. If the jury believed this, then under the oral charge,

> I charge you that if you are reasonably satisfied from the evidence in this case that the plaintiff in repossessing any of the equipment or property involved in their lease, or their leases, represented to the defendants that this repossession was to cancel any future payments or liability under the lease, then in that event the plaintiff would not be entitled to recover on their lease for that particular piece of equipment,

the jury could find for the defendants.[2]

*The trenching machine.* Plaintiff claimed damages of $3,370.36, and the jury returned a verdict for the defendants. An agent of the defendants testified that he received and communicated to ALP a "firm offer" of $10,500 for the trenching machine, but that at the

time ALP refused to sell for that price. Subsequently the machine was sold for $2,150.00 less than this amount, thus raising the possibility that the jury could have found that ALP failed reasonably to mitigate to the extent of $2,150.00. The testimony also evidences a dispute over whether the factor for discounting future rent to present value should be 6% rather than the 3% factor actually employed by ALP in its damage calculations. Use of 6% rather than 3% would have reduced plaintiff's claimed damages of $3,370.36 by $967.00. A jury finding in favor of the defendants on both of these issues to the maximum extent permitted by the evidence would reduce the total claimed damages by $2,150.00 plus $967.00, or $3,117.00, an amount which falls $253.36 short of justifying the verdict of total exoneration returned by the jury. Thus, while there was evidence on the basis of which the jury could reduce plaintiff's claim to a much smaller amount, there is no evidence to support total exoneration of defendants with respect to this item of equipment.

*The loader.* ALP claimed damages of $3,886.07. The jury returned a verdict in favor of the defendants. Plaintiff's vice-president testified to figures showing amounts due less a credit to defendants of $11,500.00, leaving the claimed balance of $3,886.07. The amount of the credit was corroborated by the testimony of plaintiff's agent to the effect that he and defendant Houghton Smith worked together in the resale of the

---

2. Plaintiff argues that a finding pursuant to this instruction could not cancel liability for rent which was due and unpaid at the time the backhoe was repossessed. Plaintiff computed damages as follows:

| | |
|---|---|
| Unpaid Rent—8/1/72 | $ 1,790.80 |
| Present cash value of future rents | 10,534.44 |
| Less credit for sale | 10,500.00 |
| Total due | $ 1,840.83 |

(Plaintiff's addition and subtraction do not quite work out, but this is irrelevant.) In order to maintain its argument, plaintiff must assume that the jury was bound first to apply the "credit for sale" to the "future

rents" item rather than to the "Unpaid Rent" item. We are given no reason why the jury should be thus restricted, nor does one occur to us.

Additionally in cross-examining one of plaintiff's witnesses, defendants' counsel elicited testimony to the effect that ALP's damage computations relating to the backhoe were premised on charging defendants interest on money invested in the machine while at the same time ALP was collecting interest on the same investment under the new lease to a second contractor. The jury might infer from this testimony that ALP had not carried its burden of proving damages on the backhoe transaction.

loader, that Smith suggested the $11,500.00 price at which the loader was sold, and that in order to obtain this price Smith offered to and did include as an inducement to the buyer an older model loader belonging to the defendants. The only evidence even arguably tending to show that the defendants were entitled to credit larger than $11,500.00 was a single generalized statement that "in practically every instance" in which defendants procured a prospective purchaser ALP would demand an excessive price.[3] This testimony was not tied specifically to the loader or to any other piece of equipment. This statement, insofar as the loader is concerned, does not rise to the level of "some evidence." A new trial with respect to this piece of equipment is thus necessary.

## II.

■ ALP assigns as error the giving of several jury charges. At trial it made no objection to any of the allegedly erroneous charges before the jury retired. Its failure to do so precludes our reviewing them except for plain error, which is not shown to be present. "[U]nder Rule 51 . . . a litigant may not complain of a charge unless he has specifically pointed out the error and given the court an opportunity to correct it." Moore v. L&N RR. Co., 223 F.2d 214 (C.A.5, 1955).

## III.

■ Defendants say that under Alabama law a lessor cannot repossess leased property and at the same time sue for future rent, so that as a matter of law the plaintiff was not entitled to recover anything except unpaid rent due at the time of repossession. The argument was noted in the pretrial order ("Defendants contend that the Plaintiff is not entitled to accelerate any monthly rentals," and "Plaintiff is not entitled to recover for future rent."), though it is unclear whether the defendants were saying that the leases did not contain a proper acceleration clause or that as a matter of law such acceleration was impermissible. The argument was not asserted in the defendants' answer, nor can we find any indication in the record that it was developed or passed on at trial. Failure to adequately present and develop this issue precludes our considering it on appeal. See D. H. Overmyer Co. v. Loflin, 440 F.2d 1213, 1215 (C.A. 5, 1971).

Affirmed in part, reversed and remanded in part for further proceedings on issue of damages only. Costs are equally divided.

---

3. There was some dispute over the proper discount rate, but use of the defendants' rate would come nowhere near justifying the verdict.