

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-6-1995

# Affiliated Mfr v Alum Co

Precedential or Non-Precedential:

Docket 94-5529

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Affiliated Mfr v Alum Co" (1995). *1995 Decisions.* Paper 158.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/158

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-5529

_____

AFFILIATED MANUFACTURERS, INC.,
Appellant,

v.

ALUMINUM COMPANY OF AMERICA,

_____

On Appeal from the United States District Court
for the District of New Jersey

(D.C. Civil Action No. 91-cv-02877)

_____

Argued:  March 7, 1995

BEFORE: HUTCHINSON and ALITO, Circuit Judges,
and RESTANI, Judge, Court of International Trade[*]

(Opinion Filed  June 6, 1995)
_____

Ross A. Lewin, Esquire                    (Argued)
Jamieson, Moore, Peskin & Spicer
300 Alexander Park – CN 5276
Princeton, NJ  08543-5276
        Attorney for Appellant

Stuart Alderoty, Esquire                  (Argued)
Thomas G. Griggs, Esquire
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
One Riverfront Plaza
Newark, NJ  07102-5490
        Attorneys for Appellee

_____

        *     The Honorable Jane A. Restani, Judge, United States
Court of International Trade, sitting by designation.

## OPINION OF THE COURT

RESTANI, Judge.

Following a trial in this action brought by plaintiff-appellant Affiliated Manufacturers, Inc. ("AMI") alleging additional money was due on a contract, the jury returned a verdict in favor of defendant-appellee Aluminum Company of America ("Alcoa") on its counterclaim for failure to satisfy contract specifications and breach of warranties. AMI appeals from the district court's grant of a motion in limine brought by Alcoa to exclude certain documents and deposition testimony as evidence of settlement negotiations under Fed. R. Evid. 408. For the reasons set forth herein, we affirm the judgment of the district court.

## I.

AMI originally filed its complaint on June 3, 1991, against Alcoa in the Superior Court of New Jersey, seeking payment of invoices amounting to $488,130. The case was removed to the United States District Court for the District of New Jersey on July 2, 1991. Alcoa filed a motion in limine on November 5, 1993, and a supplemental submission dated November 23, 1993, seeking to exclude portions of a total of fifteen items from admission at trial, including excerpts from correspondence between AMI and Alcoa, Alcoa internal memoranda and deposition testimony. The district court granted this motion

with respect to thirteen of the fifteen items, by memorandum order dated December 23, 1993.

The case was tried before a jury from March 1, 1994 to April 6, 1994. The jury returned a verdict of $100,000 for Alcoa on its counterclaim, and rejected all of AMI's claims. AMI moved for a new trial, but the motion was denied on July 19, 1994. This appeal was filed on August 17, 1994.

The dispute between AMI and Alcoa arose from a contract for design and fabrication of an automated greenline handling system ("the system").[1] The system built under this contract was never put into production. During the construction of the system, AMI submitted to Alcoa invoices for work not included in the contract. Upon receipt, Alcoa processed the invoices for payment. The parties disagree concerning one unpaid invoice for hardware costs (four screen printers) totalling $280,000, and another unpaid invoice for $208,130 in software costs. These two invoices were submitted by AMI at the end of the project, on April 5, 1990, to the attention of Thomas Pollak ("Pollak"), Alcoa's procurement manager.

Pollak consulted with Alcoa employees Earle Lockwood ("Lockwood") and Phil Kasprzyk ("Kasprzyk") concerning the invoices, because both were closely involved with the project.

---

[1]/ The system is designed to produce green, unframed interconnect devices for the electronics industry that are used to package computer chips. The system is intended to require a minimum of human intervention and consists of a series of mechanical components physically integrated and then coordinated through computer technology. Appellant's Br. at 6.

In memoranda, Lockwood and Kasprzyk each evaluated one of the two invoices from AMI. At a meeting between Pollak, Lockwood and AMI's president, Benson Austin ("Austin"), on May 2, 1990, one topic of discussion was the issue of unpaid invoices, as reflected in handwritten contemporaneous notes. Appellant's App. at 54-57 ("App.").

Alcoa's original motion in limine sought exclusion of portions of the Lockwood and Kasprzyk memoranda and a letter from Austin dated June 26, 1990, as well as portions of the meeting notes from May 2, deposition exhibits and transcripts that were not specifically described. App. at 3-5. At the request of the district court, Alcoa supplied an additional submission detailing twelve items (meeting notes, deposition testimony and letters) for which Alcoa also sought portions excluded from admission at trial. See App. at 17-21. Each of the thirteen items, for which the district court ruled portions inadmissible, will be discussed in turn.

In particular, the district court excluded portions of the memorandum by Kasprzyk dated May 1, 1990, and Kasprzyk's deposition testimony concerning the memorandum. Affiliated Mfrs., Inc. v. Aluminum Co. of America, Civ. No. 91-2877, at 7 (D.N.J. Dec. 23, 1993) ("AMI I"). The memorandum stated in part

> AMI's claim of 6251 hours of programming time
> is [un]reasonable when you consider the
> additional 4100 hours that ALCOA personnel
> contributed.

. . . .

> Since the original purchase order for the line did not thoroughly specify the capability of the line, I feel that AMI has a legitimate claim to some software compensation. I feel that AMI should only be compensated for 1/3 of the requested amount since the line does not meet the 600 card per hour specification . . . .[2]

App. at 11; see AMI I at 7. The district court also excluded a section of the handwritten notes of the May 2, 1990 meeting between Alcoa and AMI, which contained a mathematical calculation of numbers, as well as the terms "software proposal" and "above settlement proposal by Alcoa unacceptable." AMI I at 12; see App. at 57.

The district court further excluded the following excerpts of Pollak's deposition testimony regarding the purposes of the May 2 meeting and a subsequent meeting held on January 7, 1991:

> Q: [W]hat was the purpose of the visit . . . on May the 2nd, 1990?
>
> A: To the best of my recollection an attempt to reach agreement --
>
> . . . .
>
> Q: So this was about a month after the shipment of the equipment that you were there with Mr. Lockwood?
>
> A: Yes.
>
> Q: Do you recall the purpose of that visit?

---

[2]/ Parties do not dispute that the word "unreasonable" was intended.

A: An attempt to reach agreement to get the equipment to perform in accordance with the specifications.

. . . .

Q: The only other recorded visit that we have was on January 7th, 1991, . . . . [W]hat was the purpose of your visit?

A: My recollection is to reach settlement.

App. at 25-27 (Dep. Tr. of Thomas Pollak at 35-37); see AMI I at 9-10.  The court also excluded portions of Austin's deposition testimony regarding his discussions with Pollak, particularly the following statements:

Q. You were in the process of trying to negotiate a settlement?

A. No.  [Mr. Pollak] was.  I wasn't.  Not at all.

Q. You had presented a demand, ALCOA had made a proposal to settle the dispute?

A. Yes.  At this point, he said, I'm not going to pay you for any profits.  I'm just going to pay you for your cost . . ., and I told him that I wasn't in business to supply products with manufacturing costs.  I'm sorry.  I have to make a profit.

. . . .

A. Well, this had to do with the ALCOA offer. They offered what the cost of goods sold, $83,382. . . .  The ALCOA offer of $101,000, which is from this batch, gives us a loss of $12,000.

. . . .

A. I, frankly, was very surprised that we see such opposition from our, what we thought were most reasonable settlements on these,

> because you must remember we were still
> interested in doing more business with
> ALCOA . . . .
>
> . . . .
>
> A. Well, Mr. Pollak accepted both bills, and
> his comment was I will offer you so much on
> the printers now. . . . I will offer you
> this much now, and you change your invoice
> and we will pay it.
>
> . . . .
>
> A. I think that offer was either made in the
> meeting or it was made in the letter, I don't
> which.

App. at 47–52 (Dep. Tr. of Benson Austin at 74, 76–77, 88–90);

see AMI I at 11–12.

Additionally, the district court excluded portions of four letters from Pollak to Austin dated June 11, August 22, September 24, and October 31, 1990. These letters, respectively, contained the following statements:

> As a compromise, I will split the $7,500
> amortization fee, adding $15,000 to my offer.

App. at 66; AMI I at 13;

> Your letter of 1990 June 26 presented your
> logic for turning down our third proposed
> settlement for the screen printers. . . . I
> suggest we resolve this equipment issue by
> agreeing on my final offer for a
> settlement . . . . Please cancel your
> invoice . . . and issue a new invoice.

App. at 63; AMI I at 13;

> My offer still stands subject to potential
> reductions based on Alcoa's efforts in
> achieving an acceptable production rate.

. . . .

> Alcoa will inform AMI of the results of our efforts and will make a final settlement proposal taking into account all cost incurred by Alcoa.

App. at 69; AMI I at 13; and

> We are now at the point where we can make our final settlement offer for the equipment furnished against our purchase order.

. . . .

> In an effort to finally resolve this matter, Alcoa proposes that AMI submit an invoice for $195,928 for additional hardware costs for the 1655 printers and $79,358.00 to cover the software costs . . . .  Alcoa will pay this amount.  Of course, Alcoa will expect AMI to execute an appropriate release.

App. at 74-75; AMI I at 13-14.  The district court also excluded a portion of a letter from Austin to Pollak dated June 26, 1990, in which Austin explains the reasons why he chose to turn down Alcoa's offer to pay a certain dollar amount for the screen printers, referring to mathematical calculations concerning the printer charges.  App. at 14-15; AMI I at 7-8.

Also, the district court excluded the Lockwood memorandum dated January 3, 1991, and Lockwood's deposition testimony concerning the memorandum.  In the memo, Lockwood discussed Alcoa's proposal to pay "additional money," and indicated:

> In the interest of getting the line into production ALCOA decided to proceed with the software optimization on its own. . . .  In doing so we incurred costs totalling

approximately $129,000 and informed AMI that we would subtract these costs from the amount they had requested.

App. at 7-9; AMI I at 6-7. The deposition testimony excluded contained references to the January 3 memo, as follows:

That is the reason the bills were brought to my attention, because our costs had significantly increased and those just increased it even more. . . . I was asked an opinion . . . [about disputed billing figures].

App. at 34; AMI I at 10.

Lastly, the district court found excludable a February 15, 1991 letter from Austin to Pollak, stating in part,

Without going into any further detail, I am willing to give an allowance of $12,000.00 . . .

[Y]our letter of August 22, 1990 makes an offer to cover AMI's costs . . .

. . . .

Our original billing was for $488,130.00, so there is not much of a difference between now and then. You did want to know for what we would settle, without it going to litigation. This offer is being made without prejudice to AMI's normal rights in this matter.

App. at 61; AMI I at 12-13.

AMI challenges the district court's ruling as to the portions of each of the 13 items excluded from admission at trial.

II.

Appellate jurisdiction in this case is based upon 28 U.S.C. § 1291 (1988), as the district court's order was final. The district court had jurisdiction pursuant to 28 U.S.C. § 1332 and § 1441(a) (1988).

Abuse of discretion is the standard of review for denial of a request for a new trial based on the district court's alleged error in ruling on the admissibility of evidence. See Lippay v. Christos, 996 F.2d 1490, 1496 (3d Cir. 1993). A district court's ruling as to admissibility of evidence is reviewed under an abuse of discretion standard, where the question presented involves the application of the Federal Rules of Evidence. See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 749 (3d Cir. 1994). To the extent the district court's ruling turns upon an interpretation of Rule 408, it is subject to plenary review. Id. Where the trial court has made a factual finding in determining admissibility of evidence, the clearly erroneous standard is applied. United States v. 68.94 Acres of Land, 918 F.2d 389, 392 (3d Cir. 1990); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 257 (3d Cir. 1983), cert. granted in part sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 471 U.S. 1002 (1985), rev'd on other grounds, 475 U.S. 574 (1986). Under this standard, a finding of fact may be reversed on appeal only if "it is completely devoid of a credible evidentiary basis or bears no rational relationship" to the evidence in support. American Home Prods. Corp. v. Barr Labs., Inc., 834 F.2d 368, 370-71 (3d Cir. 1987).

III.

A. Fed. R. Evid. 408

1. Evidence of negotiations to settle a disputed claim

AMI contends that the district court erred in its interpretation and application of Rule 408.  AMI alleges that the court took an extreme view of the meaning of "settlement negotiations" as contemplated within the rule.  AMI asserts that the district court incorrectly found that even an "apparent difference of opinion between the parties" could trigger an exclusion under the rule.  See AMI I at 6 (citing Alpex Computer Corp. v. Nintendo Co., 770 F. Supp. 161 (S.D.N.Y. 1991)).  Further, AMI argues that the district court erred in its factual finding that a dispute existed between the parties.

The evidentiary exclusion for compromise and offers to compromise reads as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.  This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. The application of the rule is limited to evidence concerning settlement or compromise of a claim, where the evidence is offered to establish liability, or the validity or amount of the claim. Additionally, Rule 408 has been interpreted as applicable to an actual dispute, or at least an apparent difference of view between the parties concerning the validity or amount of a claim. 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 408[01] at 408-12 (1994); Kenneth S. Brown et al., McCormick on Evidence § 266, at 466 (John William Strong ed., 4th ed. 1992). The policy behind Rule 408 is to encourage freedom of discussion with regard to compromise. See Weinstein's Evidence, supra, ¶ 408[01] at 408-10.

AMI argues that the case law clearly delineates distinctions as to what constitutes "a claim which was disputed," and characterizes the excluded documents at issue as merely evidencing discussions that had not yet reached the "dispute" stage for Rule 408 purposes. Thus, AMI maintains that Rule 408 is inapplicable here, arguing that the intended construction of Rule 408 is that there must be a threat or contemplation of litigation, that goes beyond conduct or statements made to resolve differences of opinion as to the validity or amount of a claim. AMI relies chiefly upon the holdings from other circuits to support its view that the district court misinterpreted the term "dispute" and misapplied the rule. Alcoa responds that AMI

has mischaracterized these decisions, as well as the district court's reasoning, in its discussion of relevant precedent.

In reaching its conclusion to apply the Rule 408 exclusion, the district court reasoned that the Tenth Circuit's application of Rule 408, in Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co., 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978), was too restrictive in its establishment of "the point of threatened litigation [as] a clear cut-off point" for application. AMI I at 5 (quoting Big O Tire, 561 F.2d at 1373). Instead, the district court adopted the view articulated by the court in Alpex, 770 F. Supp. at 164-65, finding that the Alpex court "considered factors apart from any indicia of threatened litigation." AMI I at 5-6. The district court then proceeded to analyze the facts concerning each document and deposition excerpt that Alcoa had proposed for exclusion.

In Big O Tire, a small tire manufacturer that had used the term "Big Foot" in its business was approached by Goodyear Tire, who wished to use the same term for a national ad campaign for a new product. 561 F.2d at 1368. Both parties participated in a series of discussions about how to proceed, and Goodyear sought assurance from Big O Tire that it would not object to such use. Id. In addition to phone conversations and meetings to discuss the issue further, correspondence indicated that Big O Tire requested that Goodyear conclude its ad campaign as soon as possible, and that Goodyear responded it would use the concept as long as it "continued to be a helpful advertising device." Id.

The district court in Big O Tire determined that phone and letter communications between the parties prior to litigation concerning use of the trademark did not fall within the Rule 408 exclusion, as the calls and letters were merely "business communications." See id. at 1368, 1372-73. The Court of Appeals for the Tenth Circuit concluded that the district court did not commit manifest error in finding the disputed statements were business communications because the discussions at issue "had not crystallized to the point of threatened litigation." Id. at 1373.

To the extent Big O Tire establishes a strict standard for application of Rule 408, it was rejected by Alpex. See 770 F. Supp. at 164. The plaintiff in Alpex held certain rights relating to a patent for video games and pursued a program to combat infringement by sending letters from counsel offering certain alleged infringers the opportunity to settle what plaintiff viewed as meritorious infringement claims. Id. at 162. In some instances these notices led to extended negotiations, licensing agreements and settlement without litigation, while in other instances litigation was pursued. Id. at 162-63. The Alpex court determined that certain license agreements reached in the absence of litigation fell within the purview of the Rule 408 exclusion. Id. at 165. In its analysis, the Alpex court examined various factors in addition to indicia of threat of litigation, that might call for application of the exclusion. Id. at 164-65.

We believe that AMI has oversimplified the <u>Big O Tire</u> and <u>Alpex</u> holdings. Regarding the issue of when a "dispute" between parties exists, the <u>Alpex</u> court acknowledged that litigation need not have commenced for Rule 408 to apply. 770 F. Supp. at 164; <u>see</u> <u>North Am. Biologicals, Inc. v. Illinois Employers Ins.</u>, 931 F.2d 839, 841 (11th Cir. 1991) (finding letter written prior to suit excludable under Rule 408 as offer of settlement). Parties here concede this point. Further, <u>Big O Tire</u> is consistent with <u>Alpex</u> on this point. <u>See</u> 561 F.2d at 1373. Because of the applicable standard of review, it is not entirely clear how the Tenth Circuit would view exclusion, rather than inclusion, of negotiations made prior to "the point of threatened litigation". Furthermore, the <u>Alpex</u> court did not, as AMI asserts, adopt <u>in toto</u> the view that a dispute must "crystallize[] to the point of threatened litigation" before evidence of settlement negotiations are excludable. Rather, <u>Alpex</u> and other courts make clear that the Rule 408 exclusion applies where an actual dispute or a difference of opinion exists, rather than when discussions crystallize to the point of threatened litigation. <u>See</u> <u>Alpex</u>, 770 F. Supp. at 163; <u>Dallis v. Aetna Life Ins. Co.</u>, 768 F.2d 1303, 1307 (11th Cir. 1985) (citing <u>Weinstein's Evidence</u>, <u>supra</u>, ¶ 408[01]) (affirming admission of testimony involving settlement of similar claim between party to action and third party, where no evidence that validity or amount of payment had been in dispute).

Accordingly, we hold that the district court's construction of Rule 408 did not constitute legal error. As a

matter of interpretation, the meaning of "dispute" as employed in the rule includes both litigation and less formal stages of a dispute, and this meaning "is unchanged by the broader scope of Rule 408." Weinstein's Evidence, supra, ¶ 408[01] at 408-12. The district court properly interpreted the scope of the term "dispute" to include a clear difference of opinion between the parties here concerning payment of two invoices.

The facts of each case bear upon the trial court's exercise of discretion to apply the exclusion. See Alpex, 770 F. Supp. at 164-65; Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1364 (10th Cir. 1987) (holding if application of Rule 408 exclusion doubtful, better practice is to exclude evidence of compromise negotiations). Admittedly, it can be difficult to discern whether an "offer" was made to attempt to "compromise a claim." The existence of a disputed claim as well as the timing of the offer are relevant to making this determination. Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827 (2d Cir. 1992). The district court here found that inherent in each of the documents presented for exclusion was the parties' disagreement or dispute as to the amount and the validity of the invoice presented for payment. AMI I at 6-14.

The district court found that when viewed in context, the April 5, 1990 letter from Austin at AMI was evidence of a dispute concerning the printer design and software programming. See id. at 2-3, 6. As this letter was not among the disputed documents, we need not consider whether a dispute arose as early as April 5. Following receipt of the April 5 letter and

invoices, Kasprzyk described to Pollak in his May 1, 1990 memorandum his evaluation of the amount billed by AMI for software and his assessment of the merits of AMI's claim. App. at 11. This is the earliest document in dispute. In this memorandum, Kasprzyk concluded that

> [s]ince the original purchase order for the line did not thoroughly specify the capability of the line, I feel that AMI has a legitimate claim to some software compensation. I feel that AMI should only be compensated for 1/3 of the requested amount since the line does not meet [certain specifications]. I also feel that this is appropriate due to the AMI's overall inferior performance on system software.

Id.

AMI characterizes this memorandum as an "evaluation," implying that it did not evidence a dispute under Rule 408. See Appellant's Br. at 11. We also need not reach the question of whether the mere existence of an internal evaluation such as this memorandum provides evidence of a dispute. In his deposition Pollak stated that "[i]n preparation for [a May 2 settlement] meeting, I asked Phil Kasprzyk, an Alcoa engineer familiar with the project, his view of the disputed invoices."[3] App. at 79. That Kasprzyk's evaluation was written in order to prepare Pollak for a meeting to discuss a possible compromise necessarily

---

[3]/ In an affidavit, Austin denied Pollak's statement that one purpose of the May 2 meeting was to attempt settlement of the dispute. App. at 86. As we previously indicated, however, the notes of the May 2 meeting contained mathematical calculations, as well as the terms "software proposal" and "above settlement proposal by Alcoa unacceptable." App. at 57.

demonstrates that at least as of May 1 there was a dispute.  We cannot say that the district court erred in concluding that a dispute existed as of May 1 and that the documents at issue evidenced attempts to compromise the dispute.

2. Exclusion of internal memoranda

AMI's second argument is that the district court erred in applying the Rule 408 exclusion to internal memoranda that were a part of the fifteen items offered for exclusion under Rule 408.  AMI argues that the rule only protects conduct and statements during negotiations, and does not protect internal memoranda, or deposition testimony concerning these memoranda.  Alcoa responds that such an interpretation and application of Rule 408 would contradict the rule's purpose, serving instead to discourage open settlement discussions.

The district court found both the Lockwood and Kasprzyk memoranda, and testimony concerning these documents, to be eligible for exclusion under Rule 408.  AMI I at 8-9.  The district court declined to adopt the reasoning in Blue Circle Atl., Inc. v. Falcon Materials, Inc., 760 F. Supp. 516, 522 (D. Md. 1991), aff'd without op., 960 F.2d 145 (4th Cir. 1992), which interpreted Rule 408 to require communication of internal memoranda to an opposing party, and instead relied upon the holding in Ramada Dev. Co. v. Rauch, 644 F.2d 1097 (5th Cir. 1981).  The Court of Appeals for the Fifth Circuit in Ramada upheld the district court's exclusion of an internal report "made in the course of an effort to compromise."  Id. at 1106-07.  The

Fifth Circuit quoted the text of Rule 408, that "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible." Id. at 1106. In construing this language, the district court here determined that the

> failure of Alcoa to communicate the internal memoranda to AMI is not dispositive in the context of a Rule 408 analysis; rather, any statements prepared by Alcoa representatives that function as the basis for compromise negotiations demonstrate 'evidence of conduct' in compromise negotiations.

AMI I at 8-9. The district court further found that the memoranda served as a basis for calculation of compromise figures. Thus, the court concluded that the Rule 408 exclusion applied. Id. at 9.

First, AMI argues that the legislative history of Rule 408 suggests a different result and that the district court has incorrectly broadened the language of the rule. Second, AMI asserts that the district court should have followed Blue Circle, and that the court disregarded an important fact in Ramada that narrows its application.

Under the common law, offers of compromise were excluded from evidence, but the exclusion did not extend to "admissions of fact, even though made in the course of compromise negotiations, unless hypothetical, stated to be 'without prejudice,' or so connected with the offer as to be inseparable from it." 10 James Wm. Moore, Moore's Federal Practice § 408.01[9] (Daniel R. Coquillette et al. eds., 2d ed. 1995) (Advisory Committee's Note on Proposed Rule 408). Thus, AMI

argues, Rule 408 was intended to remedy the common law rule by expanding it merely to include evidence of conduct or statements, but not internal memoranda. <u>Id.</u> While Rule 408 was specifically designed to cover admissions of fact, its language is considerably broader than that necessary to accomplish this change.

Next, in <u>Ramada</u>, the report sought to be excluded was generated by an architect hired for the purpose of preparing an analysis of defects in the construction of a motel that plaintiff had contracted to have built. 644 F.2d at 1099, 1106. Testimony in <u>Ramada</u> indicated that the architect was "commissioned by Ramada to prepare a report that would function as a basis of settlement negotiations regarding the alleged defects in the motel." <u>Id.</u> at 1107. Thus, the Fifth Circuit determined that because the report had been prepared as a tool for settlement negotiations, it fell within the scope of Rule 408. <u>Id.</u>

In contrast to <u>Ramada</u>, the District Court of Maryland in <u>Blue Circle</u> interpreted Rule 408 as inapplicable to internal memoranda, unless they were communicated to the other side in an attempt at settlement. 760 F. Supp. at 523, citing 23 Charles Alan Wright & Kenneth W. Graham, Jr., <u>Federal Practice and Procedure</u> § 5303 (1980)). We reject this interpretation of Rule 408 as too broad, and find that the district court in <u>Blue Circle</u> overstated the meaning of the treatise citation.[4]

---

[4]/ The treatise states that "[o]f course, the mere fact that information may be useful in compromise negotiations does not mean that it is privileged where it was never communicated to the opponent." <u>Federal Practice and Procedure</u>, <u>supra</u>, § 5303, at 179

AMI argues that the decision in United States v. 320.0 Acres of Land, 605 F.2d 762 (5th Cir. 1979), also should have guided the district court, and that Ramada is distinguishable from the case at hand.  In fact, it is 320.0 Acres that is distinguishable from both Ramada and the case at hand.  In 320.0 Acres, the Fifth Circuit elected not to exclude a governmental report discussing evaluation of fair market value to be paid to a condemnee, on the basis that appraisals were not offers, but rather were "statements of the amount which the Government believes the landowner is constitutionally entitled to should negotiations fail and condemnation proceedings be initiated." Id. at 823-25.  These statements of amount made by the government were not compromise offers and were required by statute, a situation quite different from those of the Alcoa memoranda.

(..continued)
n.26 (citing United States v. Reserve Mining Co., 412 F. Supp. 705, 711-12 (D.C. Minn. 1976)).  In Reserve Mining, a party facing Rule 37 sanctions raised as a last defense the argument that numerous economic and technological feasibility studies withheld from discovery fell within the Rule 408 exclusion.  412 F. Supp. at 711-12.  The district court in Reserve Mining determined that the party to be sanctioned could not shield from discovery all documents that represented factual matters that might be or were incorporated in a settlement proposal.  Id. at 712.
    Reserve Mining does not define clearly a rule for treatment of internal memoranda, as Blue Circle implies.  Rather, the Reserve Mining court noted that the party's request for Rule 408 exclusion, if granted, would permit the exclusion of studies done long before any dispute arose.  See 412 F. Supp. at 711-12. Such is not the case here, as the Kasprzyk memorandum was written immediately before, and in preparation for, the first meeting in which the settlement of the dispute over invoices was discussed. The Lockwood memorandum was formulated after a number of correspondence concerning settlement figures.

The court notes that the Eleventh Circuit's decision in Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 642 (11th Cir. 1990), reinforces the reasoning in Ramada. In Blu-J, the Eleventh Circuit upheld the exclusion of evidence of an accountant's evaluation "prepared by mutual agreement of [the parties] as part of their settlement negotiations." Id. at 641. This independent evaluation in Blu-J was found to fall within the Rule 408 exception, and the holding in Ramada, because although the parties disagreed as to whether "an offer was on the table" during "negotiations," both parties agreed that the evaluation was done to promote settlement of a dispute. Id. at 642. Here, the district court found the Alcoa memoranda was prepared as a basis for compromise negotiations, particularly because the memoranda appeared to be intended to assist in calculation of compromise figures discussed subsequently. AMI I at 9. The district court's analysis is consistent with the view of Rule 408 expressed in the Ramada and Blu-J decisions of our sister circuits, which we find persuasive. Thus, we hold that the district court did not abuse its discretion in excluding internal memoranda prepared for use in discussion of settlement of AMI invoice amounts.[5]

IV.

_____

[5]/ Our conclusion that the district court properly excluded evidence under Rule 408 eliminates the need to reach the issue of whether the district court's decision resulted in harmless error.

The district court properly interpreted and applied the Rule 408 exclusion to suppress portions of the documents and testimony discussed herein. Further, the court's factual finding as to the existence of a dispute between the parties was not clearly erroneous. Thus, the district court did not err in its denial of the motion for new trial on the basis of its rulings as to evidentiary exclusions. The judgment of the district court is affirmed.