

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2005

# Sell v. Ingersoll Rand

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1965

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Sell v. Ingersoll Rand" (2005). *2005 Decisions.* Paper 947.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/947

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

—————

No. 04-1965

—————

SEAN SELL;
LYNN SELL, H/W,

v.

INGERSOLL-RAND COMPANY,

<u>Appellant</u>

—————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-02957)
District Judge: Hon. Berle M. Schiller

—————

Argued June 2, 2005

BEFORE: FUENTES, GREENBERG and  COWEN, <u>Circuit Judges</u>

(Filed June 29, 2005)

John E. McKeever, Esq. (Argued)
Michael J. O'Neill, Esq.
Kristin M. Barrett, Esq.
DLA Piper Rudnick Gray Cary
1650 Market Street
4900 One Liberty Place
Philadelphia, PA 19103

Counsel for Appellant

Erik K. Vogel, Esq. (Argued)
Wapner, Newman, Wigrizer & Brecher
115 South 21st Street
Philadelphia, PA 19103

Counsel for Appellees

---

OPINION

---

COWEN, Circuit Judge.

In this product liability action, Defendant-Appellant Ingersoll-Rand appeals from a final order entered by the District Court denying its post-trial motion for judgment as a matter of law or for a new trial. Ingersoll-Rand argues that the District Court issued several erroneous evidentiary rulings. We have jurisdiction under 28 U.S.C. § 1291. Because we write for the parties only, we do not set out the facts. For the following reasons, we will affirm.

Ingersoll-Rand challenges several of the District Court's evidentiary rulings. First, it contends that the District Court erred by admitting into evidence testimony regarding a post-accident modification to the drill rig. Ingersoll-Rand argues that such testimony should have been excluded pursuant to Federal Rules of Evidence 407 or 403. Second, Ingersoll-Rand argues that the District Court violated Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), by allowing the product design expert of Plaintiffs-Appellees Sean and Lynn Sell (collectively "Sells") to testify about a

particular alternative design. We review the denial of a request for a new trial premised on a district court's allegedly erroneous rulings on the admissibility of evidence for abuse of discretion. *Affiliated Mfrs., Inc. v. Aluminum Co. of America*, 56 F.3d 521, 525 (3d Cir. 1995). If the ruling as to the admissibility of evidence involves application of the Federal Rules of Evidence, it is subject to an abuse of discretion standard of review. *Id.* at 526. If the ruling hinges upon an interpretation of a rule of evidence, however, we apply plenary review. *Id.* If the district court's determination of admissibility is based on a factual finding, we must determine whether that finding was clearly erroneous. *Id*.

1. *Admission of Post-Accident Modification*

The Sells' product design expert opined that Ingersoll-Rand should have included a metal bracket over the auxiliary cut-out, to be removed by the operator's assistant whenever additional rods were required to be moved from the auxiliary carousel to the main carousel. This alternative design was in fact the post-accident change instituted by Mr. Sell's employer, who was not a party to the lawsuit. In addition to permitting the expert's testimony as evidence of an alternative design, the District Court admitted evidence regarding the metal bracket's actual use on the oil rig. Ingersoll-Rand asserts that such evidence should have been excluded under Fed. R. Evid. 407 or Fed. R. Evid. 403. As explained below, the District Court properly admitted this evidence.

Rule 407

Federal Rule of Evidence 407 provides, in relevant part, that evidence of a remedial measure taken after the occurrence of harm caused by an event "is not admissible to prove . . . a defect in a product, [or] a defect in a product's design."  Rule 407 has been consistently applied to exclude evidence of subsequent remedial measures taken by the party against whom the post-accident modification is offered.  Ingersoll-Rand maintains, however, that pursuant to this Rule, the District Court should have excluded evidence relating to the subsequent remedial measure taken by Mr. Sell's employer, even though he is not a party to the instant suit.  This argument is directly foreclosed by our decision in *Diehl v. Blaw-Knox*, 360 F.3d 426 (3d Cir. 2004), which held that "Rule 407 does not bar evidence of remedial measures taken by a non-party." *Id.* at 428; *see id.* at 430.  Ingersoll-Rand suggests that *Diehl* was wrongly decided.  We are not at liberty, however, to overrule it.  Accordingly, the District Court did not err in refusing to apply Rule 407 to exclude evidence of a non-party's post-accident addition to the oil rig.

Rule 403

Ingersoll-Rand alternatively asserts that the District Court abused its discretion in not excluding evidence that Mr. Sell's employer installed a metal bracket over the drill's auxiliary cut-out following Mr. Sell's accident under Rule 403.  Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

4

jury." A district court's Rule 403 balancing analysis is accorded substantial deference, and should not be disturbed unless irrational or arbitrary. *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 525 (3d Cir. 2003).

In determining that the probative value of the metal bracket's actual use was not substantially outweighed by any unfair prejudice, the District Court noted that the metal bracket was properly admitted as one of the alternative designs proposed by the Sells' expert. Because Ingersoll-Rand controverted this design alternative as unnecessary and as posing a grave safety concern, evidence of actual use of the bracket by Mr. Sell's employer was relevant to show that it had, in fact, been used safely.

We discern no reason to disturb the District Court's ruling. Ingersoll-Rand stresses that the Sells' case highlighted the absence of any accidents in the two years that had passed since the metal bracket was installed on the drill. Although not extraordinarily probative on the issue of whether the drill was defective as designed, that no accidents occurred in the relatively short time since installation of the metal bracket does have some probative value. In addition to its probative value as an alternative feasible design, this Court and the Pennsylvania Supreme Court have recognized that an inference of product defectiveness may appropriately be drawn from the adoption of a subsequent remedial measure employed to improve a product's safety. *See Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1198 (3d Cir. 1987); *Duchess v. Langston*, 769 A.2d 1131, 1142 (Pa. 2001). This observation is apropos here, as state of the art is not in issue. *See Diehl*, 360

F.3d at 432. Further, as noted by the District Court, evidence of the addition of the bracket served to refute Ingersoll-Rand's evidence that the bracket created a new and greater danger. Ingersoll-Rand contends, however, that the multiple references to the metal bracket modification and the lack of any accidents since its inception created prejudice in that it "likely caused the jury to discount Ingersoll-Rand's reasons why the bracket created greater danger." (Appellant's Br. at 18.) This argument goes to the weight of this evidence, and not its admissibility. The jury was free to discount the weight of the metal bracket's use as evidence of its safety in light of the relatively short time that it had in fact been used. Ingersoll-Rand was likewise free to warn the jury that the dangers created by the use of the metal bracket would become more evident over time. Significantly, the jury was informed that until this suit, there had been no claims against Ingersoll-Rand since it manufactured its first T4W drill over thirty years ago, and thus it could assess the relevance of the bracket's use against this backdrop. In short, Ingersoll-Rand's arguments respecting unfair prejudice are directed to challenging the weight of this evidence, and not its admissibility. At most, Ingersoll-Rand suffered slight prejudice, but in no event did any prejudice *substantially* outweigh the metal bracket's probative value.

2. *Admission of Expert Testimony on Alternative Design*

The District Court did not abuse its discretion in permitting the Sells' product design liability expert to testify about an alternative design involving an automatic

6

indexing pin system. After conducting a *Daubert* hearing on six proposed alternative designs proffered by the Sells' expert, the District Court limited the expert's testimony to two alternative designs. The first, discussed above, was the post-accident modification actually implemented by Mr. Sell's employer. The second involved an automatic locking pin that would positively prevent the main carousel from rotating in either direction in the event that it bounced out of the tower, when both carousel and tower are stored on top of the rig. Ingersoll-Rand challenges admission of the latter alternative design under F.R.E. 702 and *Daubert*, charging that the record's failure to substantiate actual rotation of the drill renders this testimony irrelevant.

Rule 702 permits introduction of expert testimony that will assist the trier of fact provided that: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." To be admissible under Rule 702, the district court must ensure that the evidence offered is both relevant and reliable. *Daubert*, 509 U.S. at 589; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

The Sells' expert attested that a drill rod can fall out of the auxiliary cut-out even if the rig's brakes are operating properly, the main carousel is stored in the tower, the main carousel and tower are both in the horizontal position on top of the rig, and the J-lock is in place around the rod in the auxiliary cut-out. Specifically, a drill rod may fall out of the auxiliary cut-out under these conditions, according to the expert, if the wheels of the rig

7

sufficiently "hop" when moving the drill to a new site on rough terrain, such that it causes the main carousel to bounce out of the tower and rotate to a degree that enables a rod without the J-lock attached to move into the auxiliary cut out. This testimony is pertinent to the Sells' theory of how the accident occurred.

Ingersoll-Rand claims that the record does not substantiate the theory that the automatic pin indexing scheme would have prevented the accident. It specifically points to the lack of any direct evidence of carousel bounce and rotation to the degree required for a rod without the J-lock to shift position. Contrary to this contention, there is ample factual support for this expert testimony in the record, albeit circumstantial. The drill operator testified that he observed the wheels of the rig hop immediately before the accident as he was repositioning the rig over the next drilling location, and that the carousel could potentially rotate if it bounces out of the tower. On prior occasions the drill operator witnessed the carousel bounce as high as eighteen inches resulting from wheel hop upon movement along rough terrain. Ingersoll-Rand's expert testified that the carousel could rotate clockwise if it rose five and one-third inches from its stowed position. Although the operator did not see whether the main carousel bounced out of the tower or rotated as a result of the wheel hop on this particular occasion, he did observe immediately thereafter that the main carousel was in a rotated position on the ground.

Ingersoll-Rand points to its expert's testimony that, given the positioning of the dislodged rod in relation to the J-lock rod following the incident, the main carousel would

have had to rotate 315 degrees for the accident to have occurred as the Sells' expert propounded, and that rotation to that extent is impossible. In support of this assertion, it notes undisputed testimony that the brakes on the carousel, which slow down rotation, were properly functioning on the day of the accident. It is also undisputed, however, that the brakes are intended not to prohibit rotation, but to regulate the speed of the carousel. The jury was free to discredit the conclusion of Ingersoll-Rand's expert that a rotation of 315 degrees was required for events to unfold as the Sells' witnesses described, and that such rotation was impossible.

The Sells' product design expert's testimony regarding the automatic indexing pin design was relevant, and the District Court did not abuse its discretion in admitting it.

3. *Conclusion*

For the foregoing reasons, the judgment of the District Court entered on March 30, 2004, will be affirmed.