NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2345
_____

UNITED STATES OF AMERICA

v.

WILLIAM COOK,

Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-16-cr-00050-001)
Honorable Colm F. Connolly, District Judge

_____

Submitted under Third Circuit L.A.R. 34.1(a)
February 7, 2020

BEFORE:  SHWARTZ, SCIRICA, and COWEN, Circuit Judges

(Opinion Filed:  July 14, 2020)

_____

OPINION*

_____

COWEN, Circuit Judge.

   William Cook appeals from the criminal judgment entered by the United States

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

District Court for the District of Delaware.  We will affirm.

## I.

A superseding indictment charged Cook with one count of bank fraud in violation of 18 U.S.C. § 1344(1), four counts of making false statements to a federally insured financial institution in violation of 18 U.S.C. § 1014, and one count of money laundering in violation of 18 U.S.C. § 1957.  "The charges arose out of a line of credit extended by Artisans' Bank to Cook's food broker business, AJJ Distributing, LLC, between 2008 and 2013."  United States v. Cook, Criminal Action No. 16-50-CFC, 2019 WL 2098840, at *1 (D. Del. May 14, 2019).  The line of credit was secured in part by accounts receivable owed to AJJ, and the amount of money that Cook could borrow depended on the value of "eligible items" (defined as accounts receivable and inventory aged less than ninety days).  Every week (and whenever he sought withdrawals from the line of credit), Cook was required to submit borrowing base certificates ("BBCs") listing his company's eligible items.  However, he listed account receivables even though they had already been paid.

Before the first indictment was returned, the government subpoenaed AJJs business records, and it received four boxes and seven discs in response.   Subsequently, a grand jury subpoena was issued for the attorney who had previously represented Cook and his company ("Prior Counsel").[1]  Cook filed a motion to quash and a motion for a

---

[1] This attorney is now a federal judge in Pennsylvania.  "The parties do not dispute that the prior counsel's status as a judge has no bearing" on the issues in this case. United States v. Cook, Criminal Action No. 16-50-CFC, 2018 WL 6499872, at *1 n.1. (D. Del. Dec. 11, 2018).

protective order seeking to protect, inter alia, the statements made at the July 10, 2013 meeting between Cook, the Prior Counsel, and three Artisans' Bank employees as settlement discussions and negotiations under Federal Rule of Evidence 408. The motion was denied, and the Prior Counsel testified before the grand jury.

After the District Court denied Cook's motion to dismiss the indictment, Cook filed a motion in limine to exclude the statements made by the Prior Counsel, and the government filed a motion in limine to admit evidence regarding the July 10, 2013 meeting. The government specifically proffered that it would present the testimony of the three bank employees. According to the government, the witnesses would testify that the Prior Counsel acknowledged that Cook had been falsifying the BBCs and that, when one of the bank employees described Cook's conduct as bank fraud, the Prior Counsel agreed with that characterization (and closed the meeting by saying that he and his client would be meeting with the state's attorney office). The District Court granted the government's motion to admit (and denied Cook's motion to exclude). With respect to the alleged purpose of the meeting, the District Court did not agree with Cook that the Prior Counsel's grand jury testimony "'flatly rejects' the government's allegation that Cook submitted falsified listings to the bank." Cook, 2018 WL 6499872, at *6 ("On the contrary, portions of the testimony would appear to corroborate the allegation in the Superseding Indictment that Defendant knowingly submitted listings of accounts receivable that were not 'eligible items' (i.e., were not less than 90 days old)."). The District Court also determined that Federal Rule of Evidence 408 permitted the admission of the Prior Counsel's statements because the government did not offer the statements to

3

prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction. Instead, it sought to use the statements to prove that Cook knowingly made and submitted false BBCs and intentionally defrauded Artisans' Bank. "Rule 408 would not bar the admission of Defendant's prior counsel's statements for a second, independent reason — namely, the absence of a disputed claim." Id. at *8 (citing 23 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5303 at 201 (2d ed. 2018)). According to the District Court, the statements were also admissible under Federal Rule of Evidence 801(d)(2)(C) and (D) as statements made by an authorized agent of a party, and the admission of such evidence would not create a danger of unfair prejudice or jury confusion that substantially outweighed its probative value under Federal Rule of Evidence 403.

The parties also litigated the authentication and admissibility of the purported AJJ business records. Specifically, the government sought a pre-trial ruling permitting its admission of two sets of AJJ documents drawn from the discs produced by AJJ through its Prior Counsel: Exhibit 101 (AJJ's copies of the BBCs) and Exhibits 201-206 (copies of "netting sheets" that AJJ exchanged with its primary customer, White Rose Food). The District Court heard testimony from the Prior Counsel and Postal Inspector Samuel Bracken, and it ruled the exhibits authentic pursuant to Federal Rule of Evidence 901 and conditionally admissible under Federal Rule of Evidence 104. After hearing additional evidence at trial, the District Court admitted the documents as business records.

At Cook's trial, the government presented ten witnesses (including the three bank officials who had attended the July 10, 2013 meeting) and over 100 exhibits (including

4

the business records at issue in the pre-trial litigation). The Prior Counsel testified for the defense. At the close of the government's case, Cook moved for a judgment of acquittal. It was denied.

The jury returned a guilty verdict on all counts. Cook filed a renewed motion for a judgment of acquittal, which was denied. The District Court sentenced him to sixty months of imprisonment on each count as well as three years of supervised release (to be served concurrently) and ordered him to pay restitution in the amount of $4,218,221.90 (as well as a $600 special assessment).

## II.

Cook raises a number of evidentiary issues in this criminal appeal.[2] His arguments fall into two categories: (1) challenges to the admission of statements made at the meeting between the bank employees, Cook's Former Counsel, and Cook himself; and (2) attacks on the authenticity and admissibility of the alleged business records. We conclude that the District Court did not commit any reversible error.

## A.     The July 10, 2013 Meeting

Rule 408 provides that:

(a) Prohibited Uses. Evidence of the following is not admissible -- on behalf of any party -- either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a

---

[2] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

A district court's evidentiary rulings are reviewed under an abuse of discretion standard. See, e.g., Affiliated Mfrs., Inc. v. Aluminum Co. of Am., 56 F.3d 521, 525 (3d Cir. 1995). Its interpretations of the Federal Rules of Evidence are subject to plenary review while its factual findings are reviewed for clear error. See, e.g., id.

contradiction:

> (1) furnishing, promising, or offering -- or accepting, promising to accept, or offering to accept -- a valuable consideration in compromising or attempting to compromise the claim; and

> (2) conduct or a statement made during compromise negotiations about the claim -- except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

According to Cook (and the Prior Counsel), the meeting was conducted in order to settle the dispute with Artisans' Bank. (See, e.g., Appellant's Brief at 15 (observing that, according to Prior Counsel, meeting was held to settle dispute concerning bank's conduct and its nondisclosures as well as Cook's financial statement problems).) The Prior Counsel also insisted that "he did not admit to any fraud or falsification by his client." (Appellant's Brief at 17.)

We conclude that the District Court did not abuse its discretion in applying Rule 408. "As a matter of interpretation, the meaning of 'dispute' as employed in the rule includes both litigation and less formal stages of a dispute." Aluminum Mfrs., 56 F.3d at 528. However, "Rule 408 has been interpreted as applicable to an actual dispute, or at least an apparent difference of view between the parties concerning the validity or amount of a claim." Id. at 526 (citing 2 Jack B. Weinstein & Margaret Berger, Weinstein's Evidence ¶ 408[01] at 408-12 (1994); Kenneth S. Brown et al, McCormick on Evidence § 266, at 466 (John William Strong ed., 4th ed. 1992)). The rule is not

6

implicated where the debtor is merely attempting to convince a creditor to settle an admittedly due amount for a lesser sum. Fed. R. Evid. 408 advisory committee's note to 1972 proposed rules. "Hence, the rule requires that the claim be disputed as to either validity or amount." Id. At the meeting, the Prior Counsel did not dispute that AJJ owed money to Artisans' Bank. Likewise, he did not contest the amount of money owed to the bank. In turn, the District Court appropriately rejected Cook's assertion that his attorney's grand jury testimony flatly rejected the government's theory that Cook submitted falsified listings of accounts receivable:

> On the contrary, portions of the testimony would appear to corroborate the allegation in the Superseding Indictment that Defendant knowingly submitted listings of accounts receivable that were not "eligible items" (i.e., were not less than 90 days old). The testimony can also be read as consistent with the government's proffered testimony of Bank employees that "falsified" listings of accounts receivable and "fraud" were discussed at the meeting, even if it is not clear from the testimony that Defendant's prior counsel and the Bank employees had the same understandings about why the listings could be fairly described as "falsified" or what was intended by the use of "fraud" at the meeting.

Cook, 2018 WL 6499872, at *6. As the District Court indicated, the government proffered the testimony of the three bank employees who attended the meeting—who would (and subsequently did) testify at trial that the Prior Counsel admitted that Cook had committed fraud and falsified the accounts receivables listed on the BBCs.

Furthermore, the District Court properly ruled that the Prior Counsel's statements were admissible under Rule 801(d)(2). According to Cook, "the facts presented [in this case] were certainly unique to, and easily distinguishable from, any Circuit precedent or the case cited by the District Court in its ruling." (Appellant's Brief at 27.) He asserts

7

that (among other things) the alleged statements were substantially and materially denied by the Prior Counsel himself, the Prior Counsel was not called by the government to testify, and the statements were made in the context of settlement negotiations discussing significant issues including potential regulatory misconduct by the bank. Nevertheless, the plain terms of Rule 802(d)(2) exclude from the definition of hearsay a statement that "is offered against an opposing party and . . . (C) was made by a person whom the party authorized to make a statement on the subject, [or] (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." As we have recognized, "[c]ourts have applied this rule to admit evidence of statements made by attorneys in a representational capacity." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1198 (3d Cir. 1993) (citing Hanson v. Waller, 888 F.2d 806, 814 (11th Cir. 1989)). It appears undisputed that the Prior Counsel represented Cook as his attorney at the July 10, 2013 meeting. In turn, the Prior Counsel's statements at this meeting were not made as part of a criminal investigation or proceeding. We further note that the defense called the Prior Counsel as a witness at Cook's trial and that we have already disposed of Cook's "settlement negotiations" theory.

Cook argues that "the admission of Mr. Cook's silence as substantive evidence of guilt—despite the silence having been counseled and directed by his attorney—was a violation of the 5th Amendment and Rule of Evidence 403." (Appellant's Brief at 30 (emphasis omitted).) We do not agree. Cook admits that "the alleged admissions were clearly not made in the context of a custodial interrogation" (id.) and that "[t]he facts of this case do not fall squarely within any of the precedents that address the use of pre-

8

custodial or post-custodial silence as substantive evidence of guilt" (id. at 32). In fact, Cook acknowledges that his case "does not involve any form of official coercion by government entity" (id. at 35). On the contrary, the only people at the meeting were Cook, his attorney, and the employees of Artisans' Bank (a non-governmental entity). See, e.g., New York v. Quarles, 467 U.S. 649, 654 (1984) ("The Fifth Amendment itself does not prohibit all incriminating admissions; '[a]bsent some officially coerced self-accusation, the Fifth amendment privilege is not violated by even the most damning admissions.'" (quoting United States v. Washington, 431 U.S. 181, 187 (1977)) (alteration in original)).

## B. Business Records

Cook argues at some length that his conviction "was the product of the admission of unauthenticated hearsay documents that the Government improperly characterized through opinion testimony." (Appellant's Brief at 14.) The District Court did not abuse its discretion by finding the documents both authentic and admissible.

"To satisfy the requirements of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Cook notes that the Prior Counsel testified that he had no specific recollection of receiving a request for documents, did not recall obtaining, reviewing, or forwarding any documents to the government, and could not identify or authenticate any documents. Presented with a folder allegedly containing the original seven discs, the Prior Counsel "identified that eight discs were contained in the folder where the original seven discs were supposedly securely maintained" (and the

9

government responded that an extra disc must have been mistakenly added) (Appellant's Brief at 44 (citing JA195)). With respect to Postal Inspector Bracken's testimony, Cook observes that, among other things, he did not specifically identify the person or persons who provided him with copies of the records purportedly received by the United States Attorney's Office, he never had possession of the "original" CDs, and "was not present when they allegedly arrived in the office and does not know who received them or handled them" (id. at 38-39 (citing JA272)). He also acknowledged that the metadata identified authors other than Cook himself and that merely saving a document could appear as a modification.

However, the District Court appropriately determined that the government satisfied the "slight" standard for authentication. See, e.g., United States v. Turner, 718 F.3d 226, 232 (3d Cir. 2013). The records at issue here were produced by Prior Counsel's law firm on firm letterhead in response to a subpoena seeking documents from the firm's own client. Additionally, Artisans' Bank and White Rose produced almost identical versions of the BBCs and netting sheets, respectively. The metadata also indicated that the last "modification"—by Cook or at least someone using "a computer that Mr. Cook had put identifying information into" (Appellant's Brief at 39-40 (citing JA275))—occurred contemporaneously with the documents' business use.

We also hold that the District Court properly admitted the records under Rule 803(6). "While a noncustodial witness such as a government agent, or even documentary evidence, may be used to lay the foundation required by Rule 803(6), that witness or those documents must still demonstrate that the records were made contemporaneously

10

with the act the documents purport to record by someone with knowledge of the subject matter, that they were made in the regular course of business, and that such records were regularly kept by the business." United States v. Pelullo, 964 F.2d 193, 201 (3d Cir. 1992). Cook focuses on the testimony offered by the Prior Counsel and Postal Inspector Bracken (e.g., calling into question the inspector's knowledge of the grocery business). But the government points out that there were other qualified witnesses who testified at trial. "[Q]ualified witnesses from [Artisans'] Bank and White Rose testified as to their weekly receipt of the documents by Cook as sole owner and operator of AJJ; they described how those documents were used by both organizations in regular business; they compared the AJJ's files to their own organizations' maintained sets of documents; and the documents' metadata confirmed Cook's weekly creation and modification of the documents." (Appellee's Brief at 52 (citing JA640-JA644, JA657, JA691, JA725, JA833, JA888-JA895, JA902, JA904-JA907, JA929-JA931, JA987-JA991, JA1031-JA1032)).

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.